23-6277-cr
*United States v. Turner*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of July, two thousand twenty-four.

PRESENT:
> JOSEPH F. BIANCO,
> MYRNA PÉREZ,
> SARAH A. L. MERRIAM,
> *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

       *Appellee*,

     v.                                        23-6277-cr

DASHAWN TURNER,

       *Defendant-Appellant*.

_____

| | |
|---|---|
| FOR APPELLEE: | WILLIAM C. KINDER, Assistant United States Attorney (David Abramowicz, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, New York. |
| FOR DEFENDANT-APPELLANT: | KENDRA L. HUTCHINSON, Of Counsel, Federal Defenders of New York, Inc., Appeals Bureau, New York, New York. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Andrew L. Carter, Jr., *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the appeal is **DISMISSED** as moot.

Defendant-Appellant Dashawn Turner appeals from the district court's judgment, entered on March 17, 2023, revoking his term of supervised release and sentencing him to a total of nineteen months' imprisonment for violations of his supervised release. The supervised release conditions that Turner was found to have violated were imposed in connection with his underlying conviction in 2018, pursuant to a guilty plea, of being in possession of a firearm and ammunition, after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). After conducting an evidentiary hearing, the district court found the following violations of supervised release: (1) on August 28, 2022, Turner committed the state crimes of attempted assault with intent to cause physical injury, in violation of New York Penal Law § 110-120.00(01) (Specification Two), and harassment in the second degree, in violation of New York Penal Law § 240.26(01) (Specification Three); and (2) on September 10, 2022, Turner committed the state crimes of attempted murder, in violation of New York Penal Law § 125.25(01) (Specification Four) and criminal possession of a weapon in the fourth degree, in violation of New York Penal Law § 265.01(01) (Specification Six), and possessed a firearm in violation of a mandatory condition of his supervised release (Specification Eight). On February 23, 2023, the district court revoked Turner's supervised release based on these violations and sentenced him to nineteen months' imprisonment on Specification Four and twelve months' imprisonment on Specifications Two, Three, Six, and Eight, with all sentences to run concurrently. The district court did not impose any additional term of supervised release.

2

On appeal, Turner argues that (1) with respect to Specifications Four, Six, and Eight, the district court erred in finding good cause to admit into evidence at the revocation hearing three statements by a non-testifying eyewitness to the September 10, 2022 incident, in violation of Federal Rule of Criminal Procedure 32.1(b)(2)(C); and (2) this error was prejudicial, because absent the admitted hearsay statements, the district court lacked sufficient evidence to support its findings on certain violations. Turner does not challenge the district court's revocation of supervised release based upon the other specifications—namely, Specifications Two and Three— or the twelve-month sentence resulting from those specifications.

On May 3, 2024, while this appeal was pending, Turner completed the term of imprisonment imposed for the supervised release violations by the district court and was released. He is no longer subject to any criminal justice sentence as a result of the challenged revocation. The parties submitted supplemental filings addressing whether Turner's release from custody mooted his appeal. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to dismiss the appeal as moot.[1]

Article III, Section 2 of the U.S. Constitution imposes a case-or-controversy requirement on the authority of the federal courts, which is satisfied only if "a party . . . , at all stages of the litigation, ha[s] an actual injury which is likely to be redressed by a favorable judicial decision."

---

[1] As an initial matter, Turner urges the Court not to consider the mootness issue on procedural grounds because the government made the request to dismiss on that ground in a Rule 28(j) letter, rather than filing a formal motion. We remind the government that the purpose of a Rule 28(j) letter is to inform the Court of "pertinent and significant authorities" that have "come to a party's attention after the party's brief has been filed—or after oral argument but before decision." Fed. R. App. P. 28(j). If a party seeks affirmative relief from the Court, such as a dismissal, it is best practice for the party to file a motion. *See* Fed. R. App. P. 27. However, because the Court can consider jurisdictional issues *sua sponte* and we have received Turner's written response on the merits, we discern no prejudice to Turner in considering the mootness issue at this juncture without a formal motion.

*United States v. Williams*, 475 F.3d 468, 478–79 (2d Cir. 2007) (internal quotation marks and citations omitted). Following that rule, we must typically dismiss a case "if an event occurs during the course of the proceedings or on appeal that makes it impossible for [us] to grant any effectual relief whatever to a prevailing party." *Id.* at 479 (internal quotation marks and citations omitted). An appeal by a criminal defendant may therefore be mooted if that defendant is subsequently released from custody while the appeal is pending, as long as "neither we nor the district court can grant him the relief he is seeking." *United States v. Chestnut*, 989 F.3d 222, 224 (2d Cir. 2021).

In his supplemental submission, Turner contends that his claim "presents an ongoing case and controversy" because "the total length of his [completed] sentence . . . is a fact that adversely affects, and actually has adversely affected, his ability to obtain employment." Appellant's Supp. Ltr. at 3. In particular, Turner explained:

> Turner resides in the Southern District of New York. Under New York law, entities engaging in employment and licensing decisions "shall" consider the "seriousness of the offense" when deciding whether to hire or license someone who was convicted of a criminal offense. N.Y. Correct. Law § 753. And, also under New York law, the seriousness of the offense is determined not just by the crime's misdemeanor/felony status or the conduct involved, but also by the term of punishment imposed. Here, the most serious of the September 10, 2022, revocations that Turner challenges on appeal resulted in a 19-month sentence of imprisonment. This 19-month sentence is treated as part of the penalty for the initial offense. Thus, Turner's sentence of incarceration was increased from 52 months' imprisonment (on the underlying conviction) to 71 months' imprisonment (total) as a result of the challenged revocation proceeding. During job interviews, Turner must disclose this 71-month sentence upon request. And when he does, prospective employers are required, under New York law, to consider this sentence length in deciding whether to offer him employment despite his criminal record. Obviously, 71 months is longer—and more "serious"—than the 52 months Turner received at the original sentencing.

*Id.* at 2 (internal quotation marks, citations, and footnote omitted).

To determine whether a challenge to a criminal conviction remains live after the term of incarceration has ended because of an ongoing collateral consequence of the conviction, such as

difficulty obtaining employment, the Supreme Court has set forth "a two-step analysis: *First*, the Court determine[s] whether a presumption of 'continuing collateral consequences' should apply. And *second*, the Court determine[s] whether, applying the presumption or not, there was sufficient evidence that such consequences in fact existed." *Nowakowski v. New York*, 835 F.3d 210, 218 (2d Cir. 2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 8 (1998)). We have declined to find that a presumption of continuing collateral consequences applies to a revocation of supervised release, *see United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999), following the Supreme Court's "clear reluctance to extend [this] presumption outside of" the "narrow category" of criminal convictions. *Nowakowski*, 835 F.3d at 218 (citing *Probber*, 170 F.3d at 348); *see also United States v. Santiago*, No. 20-3845, 2023 WL 3477155, at *1 (2d. Cir. May 16, 2023) (summary order) ("While challenges to criminal *convictions* are presumed to have continuing collateral consequences even after the defendant has completed his sentence, that presumption does not apply to *violations* of probation, parole, or supervised release." (internal quotation marks and citations omitted)).

Absent the presumption of continuing collateral consequences, a defendant challenging a judgment of revocation who has completed the term of incarceration "bears the burden of demonstrating that some concrete and continuing injury continues to flow from the fact of the revocation." *Probber*, 170 F.3d at 348. However, non-statutory collateral consequences of a completed term of incarceration imposed upon revocation of supervised release, such as decreased employment prospects, do not suffice to establish the required concrete and continuing injury. Indeed, in *Lane v. Williams*, 455 U.S. 624, 632–33 (1982), the Supreme Court specifically held that the impact of a parole violation on a defendant's "employment prospects" was *not* sufficient to demonstrate continuing injury for these purposes, because "[t]he discretionary decisions that are

5

made by an employer . . . are not governed by the mere presence or absence of a recorded violation of parole; these decisions may take into consideration, and are more directly influenced by, the underlying conduct that formed the basis for the parole violation." *See also Spencer v. Kemna*, 523 U.S. 1, 13 (1998).

Here, Turner argues that his appeal is not moot because New York law requires certain entities engaging in employment and licensing decisions to consider, when evaluating an applicant's criminal history, the "seriousness of the [applicant's] offense." N.Y. Correct. Law § 753. He contends that this creates a statutory "concrete and continuing injury" that "continues to flow from" the nineteen-month sentence he received on the supervised release violation. Appellant's Supp. Ltr. at 2 (quoting *Probber*, 170 F.3d at 348).

We find Turner's argument unpersuasive. As a threshold matter, we note that Turner does not challenge on appeal the district court's revocation or sentence with respect to Specifications Two or Three, which resulted in concurrent sentences of twelve months' imprisonment. Therefore, the total term of imprisonment imposed for his underlying conviction and his unchallenged supervised violations would be sixty-four months even if Turner prevailed on this appeal and the challenged specifications were vacated. Assuming *arguendo* that those making employment or licensing decisions would be compelled under New York law to consider the total length of the sentence in determining the seriousness of his underlying offenses,[2] Turner has no basis for asserting that such entities would find it material to their decision that he served a total term of

---

[2] The cases Turner cites in support of this proposition are inapposite. One indicates merely that the statutory maximum sentence is a relevant factor in evaluating the seriousness of the offense. *See Bonacorsa v. Van Lindt*, 71 N.Y.2d 605, 615 (1988). The other mentions the length of a licensee's sentence only because the licensee contended that the licensing entity failed to consider her argument that she had been punished enough by a two-and-a-half-year sentence. *See Allrich v. Regents Rev. Comm. Off. of Legal Servs.*, 179 A.D.3d 1156, 1158 (N.Y. App. Div. 3d Dep't 2020).

6

imprisonment of *sixty-four months*, rather than *seventy-one months*, on his underlying conviction for illegally possessing a firearm and ammunition after being convicted of a felony, and his unchallenged supervised release violations.[3]  In short, we conclude that any effect on Turner's future employment or licensing opportunities is too speculative to constitute a "concrete and continuing injury [that] continues to flow from the fact of the revocation," *Probber*, 170 F.3d at 348, and thus, the completion of his prison sentence on the revocation (with no additional term of supervision) renders this appeal moot.

*           *           *

We have considered Turner's remaining jurisdictional arguments and find them to be without merit.  Accordingly, we **DISMISS** this appeal as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Turner notes that he recently interviewed for a job and, when the potential employer asked if he had served time in prison and he disclosed his total sentence of seventy-one months, the interviewer "recoil[ed] at the sentence length he provided, and [he] did not receive a job offer."  Appellant's Supp. Ltr. at 3 n.2. However, one cannot reasonably infer from that experience that the interviewer's reaction and decision would have been any different if Turner had instead disclosed that he served a total prison term of sixty-four or even fifty-two months.

7